

SCOTT + SCOTT LLP
Arthur L. Shingler III (181719)
Nicholas J. Licato (228402)
600 B Street, Suite 1500
San Diego, CA 92101
Tel.: 619/233-4565
Fax: 619/233-0508
Email: nlicato@scott-scott.com
Email: ashingler @scott-scott.com

SCOTT + SCOTT LLP
David R. Scott
108 Norwich Avenue
P. O Box 192
Colchester, CT 06415
Tel: 860/537-5537
Fax: 860/537-4432
Email: drscott@scott-scott.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| YUK LING LUI, on Behalf of Herself and All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| vs. | |
| FORMFACTOR, INC., IGOR Y. KHANDROS, RONALD C. FOSTER and RICHARD M. FREEMAN, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based on, among other things, the investigation conducted by and through Plaintiff's attorneys, which included, amongst other things, a review of the Defendants' press releases, Securities and Exchange Commission ("SEC") filings by FormFactor, Inc. ("FormFactor" or the "Company") and its related entities (collectively "Defendants"), as well as media reports about the Defendants. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY AND OVERVIEW

1. This is a securities class action on behalf of all purchasers of the publicly traded securities of FormFactor between April 26, 2006 and October 24, 2007 (the "Class Period"), against FormFactor and certain of its officers and directors for violations of the Securities Exchange Act of 1934 ("1934 Act").

2. FormFactor, Inc. develops and markets advanced wafer probe cards, used by semiconductor manufacturers to electrically test integrated circuits, or ICs. The Company claims that its wafer sort, burn-in and device performance testing products are used by semiconductor manufacturers to cost-effectively perform IC testing upstream, at the wafer level.

3. As discussed herein, Defendants false and misleading statements largely concerned the nature of the Company's production capabilities, financial results and growth prospects.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §78aa. The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5.

5. Venue is proper in this District pursuant to §27 of the 1934 Act. FormFactor is headquartered in this District and many of the false and misleading statements were made in or issued from this District.

THE PARTIES

6. Plaintiff Yuk Ling Lui purchased FormFactor publicly traded securities as described in the attached certification and was damaged thereby.

7. Defendant FormFactor is the leader in advanced wafer probe cards, which are used by semiconductor manufacturers to electrically test integrated circuits, or ICs. The Company's wafer sort, burn-in and device performance testing products move IC testing upstream from post-packaging to the wafer level, enabling semiconductor manufacturers to lower their overall production costs, improve yields, and bring next-generation devices to market. FormFactor stock is traded on the Nasdaq Stock Market under the ticker symbol "FORM". The Company maintains its corporate headquarters at 7005 Southfront Road, Livermore, California.

8. Defendant Igor Y. Khandros ("Khandros") was at all relevant times, CEO and a director of FormFactor. During the Class Period, Khandros reaped approximately $5.8 million in insider trading proceeds from the sale of his FormFactor stock. Khandros received annual cash compensation of over $1.1 million for FY2006, including a base salary of $436,835 and a cash bonus of $572,000.

9. Defendant Ronald C. Foster ("Foster") was at all relevant times, CFO of FormFactor. Foster received annual cash compensation of over $540,000 for FY2006, including a base salary of $285,962 and a cash bonus of $261,993.

10. Defendant Richard M. Freeman ("Freeman") was at all relevant times, Senior Vice President of Operations of FormFactor.

11. Defendants Khandros, Foster and Freeman are referred to herein as the "Individual Defendants" and are liable for the false statements pleaded herein at ¶¶14-18, as those statements were "group-published" information for which they are responsible. By reason of their stock ownership and/or positions with the Company, the Individual Defendants were controlling persons of FormFactor. FormFactor in turn controlled the Individual Defendants. The Individual Defendants and FormFactor are liable under §20(a) of the 1934 Act.

## SCIENTER

12. In addition to the above-described involvement, each Individual Defendant had knowledge of FormFactor's problems and was motivated to conceal these problems in order to retain, among other things, lucrative salaries, bonuses, and stock option grants. Defendant Khandros, as CEO for the Company, and Foster, as CFO, were responsible for financial reporting and communications with the market. Each Individual Defendant sought to demonstrate that he could lead the Company successfully and could generate the growth expected by the market.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

13. Each Defendant is liable for (i) making false statements, *or* (ii) failing to disclose adverse facts known to him about FormFactor. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of FormFactor common stock was a success, as it (i) deceived the investing public regarding the Company's prospects and business; (ii) artificially inflated the prices of FormFactor's common stock; and (iii) caused Plaintiff and other members of the Class to purchase FormFactor common stock at inflated prices.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

14. On April 26, 2006, Defendants issued a press release entitled "FormFactor, Inc. Announces 2006 First Quarter Financial Results - Record quarterly revenues of $81.3 million; Net income up 119% year over year." This press release stated in relevant part:

> LIVERMORE, CA — April 26, 2006 — FormFactor, Inc. (Nasdaq: FORM) today announced its financial results for the first quarter of fiscal 2006. Quarterly revenues were a record $81.3 million, up 13% from $71.8 million in the fourth quarter of fiscal 2005, and up 60% from $50.9 million for the first quarter of fiscal 2005.
>
> "Following 34% revenue growth in 2005, we achieved record revenues based on solid operating performance as we successfully ramped our industry-leading MEMS facility", said Joseph Bronson, President of FormFactor.
>
> Net income for the first quarter of fiscal 2006 was $10.8 million or $0.25 per share on a fully diluted basis, which included $2.5 million or $0.05 of incremental FAS 123 (R) stock option expense net of tax. This compares to $10.5 million or $0.25 per share on a fully diluted basis for the fourth quarter of fiscal year 2005, and $4.9 million or $0.12 per share on a fully diluted basis for the first quarter of fiscal year 2005, both of which exclude incremental stock-based compensation from the adoption

of FAS 123 (R). The effective tax rate for the first quarter of fiscal 2006 was 35.9% compared to 29.1% for the fourth quarter of fiscal 2005 impacting net income by $1.1 million or $0.03 per fully diluted share.

Bookings of $95.9 million for the first quarter of fiscal 2006 also set a company record, with an increase of 17% from $82.2 million for the fourth quarter of fiscal 2005 and an increase of 89% from $50.9 million for the first quarter of fiscal 2005.

Cash, cash equivalents, restricted cash and marketable securities increased by $188 million to $402 million at the end of April 1, 2006 reflecting $182 million of net cash proceeds from our follow-on offering executed in March 2006 and $8.7 million of net cash proceeds from operations and other sources.

"Growing demand for the Company's leading-edge advanced technology products continued this quarter. Our innovation continues to drive a strong product pipeline expanding our leadership position across multiple markets," said CEO Igor Khandros.

***

15.    On October 25, 2006, Defendants issued a press release entitled "FormFactor, Inc. Announces 2006 Third Quarter Financial Results - Record Quarterly Revenue of $96.8 Million, Up 55% Year over Year." The press release stated in relevant part:

FormFactor, Inc. Announces 2006 Third Quarter Financial Results - Record Quarterly Revenue of $96.8 Million, Up 55% Year over Year

LIVERMORE, Calif. — October 25, 2006 — FormFactor, Inc. (Nasdaq: FORM) today announced its financial results for the third quarter of fiscal 2006, ended September 30, 2006. Quarterly revenues were $96.8 million, up 5% from $92.4 million in the second quarter of fiscal 2006, and up 55% from $62.4 million in the third quarter of fiscal 2005.

"FormFactor had another record quarter as revenue, production and net income reached historical highs.  Demand for advanced probe cards in the third quarter continued to reflect the ongoing trends in the market including customers' ramping production for memory and logic, the transition to advanced nodes, and the ongoing need for higher parallelism in wafer test," said Joseph Bronson, President of FormFactor. "Factory capacity continued to ramp, as production efficiencies and yields increased in many segments of our manufacturing operations."

Net income for the third quarter of fiscal 2006 was $15.8 million or $0.33 per share on a fully diluted basis, which included $3.9 million or $0.08 per share of incremental FAS 123 (R) stock option expense, net of tax. This compares to $15.3 million or $0.32 per share on a fully diluted basis for the second quarter of fiscal 2006, which included $2.8 million or $0.06 per share of incremental FAS 123 (R) stock option expense, net of tax. Net income for the third quarter of fiscal 2005 was $9.8

million or $0.23 per share on a fully diluted basis, which was prior to the adoption of FAS 123 (R)

Bookings for the third quarter of fiscal 2006 were $90.5 million. Bookings for the second quarter of fiscal 2006 and third quarter of fiscal 2005 were $96.5 million and $62.9 million, respectively.

"We are pleased with our 63% revenue growth year-to-date," said Igor Khandros, Chief Executive Officer of FormFactor. "We are encouraged by customers' interest in our new Harmony™ NAND Flash product. We are confident in business growth opportunities in 2007 and beyond, driven by our robust product development pipeline, supporting multiple growth drivers in our customers' businesses."

***

16. On January 31, 2007, Defendants issued a press release entitled "FormFactor, Inc. Announces 2006 Fourth Quarter and Year-end Financial Results - Record revenue and profit in fourth quarter caps another record year in 2006 with 55% revenue growth." The press release stated in relevant part:

LIVERMORE, Calif. — - January 31, 2007— FormFactor, Inc. (Nasdaq: FORM) today announced its financial results for the fourth quarter and fiscal year 2006, ended December 30, 2006. Quarterly revenues were $98.7 million, up 2% from $96.8 million in the third quarter of fiscal 2006, and up 37% from $71.8 million in the fourth quarter of fiscal 2005. Revenues for the fiscal year ended December 30, 2006 were $369.2 million, up 55% from $237.5 million in fiscal year 2005.

Net income for the fourth quarter of fiscal 2006 was $18.9 million or $0.39 per share on a fully diluted basis, which included $4.6 million or $0.09 per share of incremental FAS 123 (R) stock option expense, net of tax. This compares to $15.8 million or $0.33 per share on a fully diluted basis for the third quarter of fiscal 2006, which included $3.9 million or $0.08 per share of incremental FAS 123 (R) stock option expense, net of tax. Net income for the fourth quarter of fiscal 2005 was $10.5 million or $0.25 per share on a fully diluted basis, which was prior to the adoption of FAS 123 (R).

Net income for fiscal year 2006 was $60.8 million or $1.29 per share on a fully diluted basis, which included $13.6 million, or $0.29 per share of incremental FAS 123 (R) stock option expense, net of tax, compared to $30.2 million or $0.73 per share on a fully diluted basis for fiscal year 2005.

"We finished 2006 with another record quarter as revenue and profit reached historical highs. 2006 was an exceptional year for FormFactor, with 55% annual revenue growth, fueled by strong contributions to growth from our Memory and Logic businesses. At the same time, we expanded our product offerings in multiple markets,"

said Igor Khandros, CEO of FormFactor. "We believe the market outlook for advanced probe cards remains strong as we enter 2007."

***

17. On April 25, 2007, Defendants issued a press release entitled "FormFactor Announces First Quarter 2007 Financial Results - Record quarterly revenues of $102.3 million, up 26% year over year." The press release stated in relevant part:

> LIVERMORE, Calif. — - April 25, 2007— FormFactor, Inc. (Nasdaq: FORM) today announced its financial results for the first quarter of fiscal 2007. Quarterly revenues were a record $102.3 million, up 26% from $81.3 million in the first quarter of fiscal 2006, and up 4% from $98.7 million in the fourth quarter of fiscal 2006.
>
> Net income for the first quarter of fiscal 2007 was $14.8 million or $0.30 per share on a fully diluted basis, which included $5.2 million or $0.11 per share of stock-based compensation expense, net of tax. This compares to $18.9 million or $0.39 per share on a fully diluted basis for the fourth quarter of fiscal 2006, which included $4.8 million or $0.10 per share of stock-based compensation expense, net of tax. Net income for the first quarter of fiscal 2006 was $10.8 million or $0.25 per share on a fully diluted basis, which included $2.8 million or $0.06 per share of stock-based compensation expense, net of tax.
>
> "We had yet another record quarter, as our customers are accelerating their transition to new technology nodes. This trend and our business momentum reaffirm FormFactor's opportunities in 2007 and beyond," said Igor Khandros, CEO of FormFactor.

***

18. On July 25, 2007, Defendants issued a press release entitled "FormFactor, Inc. Announces Second Quarter 2007 Financial Results - Record quarterly revenues of $114.1 million, up 24% year over year." The press release stated in relevant part:

> LIVERMORE, Calif. — -July 25, 2007 — FormFactor, Inc. (Nasdaq: FORM) today announced its financial results for the second quarter of fiscal year 2007, ended June 30, 2007. Quarterly revenues were a record $114.1 million, up 12% from $102.3 million in the first quarter of fiscal 2007, and up 24% from $92.4 million in the second quarter of fiscal 2006.
>
> Net income for the second quarter of fiscal 2007 was $18.6 million or $0.38 per share on a fully diluted basis, which included $4.2 million or $0.08 per share of stock-based compensation, net of tax. This compares to $14.8 million or $0.30 per share on a fully diluted basis for the first quarter of fiscal 2007, which included $5.2

> million or $0.11 per share of stock-based compensation, net of tax. Net income for the second quarter of fiscal 2006 was $15.3 million or $0.32 per share on a fully diluted basis, which included $3.1 million or $0.06 per share of stock-based compensation, net of tax.
>
> "FormFactor had another outstanding quarter — setting revenue, bookings, and operating income records. Our 24% year over year growth was fueled by the particular strength of DRAM, as well as healthy NOR Flash and Logic segments. We continued to focus on the development and qualification of new products in Flash, DRAM and Fine Pitch logic to expand our offerings in multiple applications and innovate to lead the market to the next generation of testing technology," said Igor Khandros, CEO of FormFactor.
>
> ***

19. Defendants' statements concerning FormFactor's financials, as contained in ¶¶14-18 were false and misleading, because the statements selectively concealed vital information from investors, including a true accounting for the Company's obsolete inventory and serious production constraints which would adversely impact costs and expenses for the Company's new Harmony product.

## THE TRUTH IS REVEALED

20. On October 24, 2007, after the close of the markets, Defendants issued a shocking press release entitled "FormFactor, Inc. Announces Record Revenue Quarter of $125.3 million, Up 29% Year Over Year - Company also announces internal review of inventory valuation practices." The press release stated in relevant part:

> LIVERMORE, Calif. — October 24, 2007 — FormFactor, Inc. (Nasdaq: FORM) today announced revenue for the third quarter of fiscal year 2007, ended September 29, 2007. The Company posted record quarterly revenue of $125.3 million. These results compare to revenue of $114.1 million, a 10% increase from the second quarter of fiscal 2007 and $96.8 million, a 29% increase from the third quarter of fiscal 2006. The company had a cash balance of $537 million as of September 29, 2007.
>
> "FormFactor delivered another record revenue quarter driven by strength in DRAM, NOR and KGD as we continued to lead the market for advanced probe cards. As existing customers migrated to our new product platforms and we penetrated emerging markets such as Wire Bond Logic, design activity also increased," said Igor Khandros, CEO of FormFactor.

> The Company said that it is unable at this time to release further income statement data with respect to the third quarter. The Company is currently reviewing its historic practices with respect to inventory valuation in light of issues identified by the Company in the course of preparation of financial statements for the third quarter. Based on the review to date management believes that adjustments to inventory valuations may be required with respect to periods prior to the third quarter of 2007. These potential adjustments could change inventory, gross margin, operating margin and net income from the amounts previously reported for the affected periods. The Company has not yet determined the magnitude of these adjustments or whether the adjustments will be reflected in the third quarter financial statements or in a restatement of the affected periods. The Company believes, however, that its third quarter operating margin and net income per share, without giving effect to adjustments in respect of prior periods, should be not less than the 20.5%-21% and $0.38-$0.40 per share, respectively, provided as management guidance in the Q2 earnings call conducted on July 25, 2007.
>
> The Company is working to complete the internal review as promptly as practicable.
>
> ***

21. On this news, the share value of the Company's stock promptly dropped $7.70 per share off the previous close of $43.24, closing at $35.54 on October 25, 2007 on massive trading volume of over 8.3 million shares - a single day loss of over 17.8% and a loss of approximately 25.6% from the Company's Class Period high.

22. During the Class Period.. the various Company statements were false and misleading, as they concealed that:

(a) the Company failed to properly account for its obsolete inventory;

(b) the Company was experiencing production constraints related to its new Harmony product;

(c) the production constraints would significantly increase production costs and expenses; and

(d) the constraints would increase the likelihood that the Company's customers would seek adjustments or go elsewhere, placing a ceiling on the Company's future revenue.

23. The almost 17.8% decline in FormFactor's stock price on October 25, 2007, at the end of the Class Period, was the direct result of the unraveling of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of

FormFactor's stock price declines negate any inference that the loss suffered by plaintiff and other Class members was caused by changed market conditions. macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct.

24. While the almost 17.8% decline in FormFactor's stock price occurred as Defendants' fraud was being revealed, the Standard & Poor's 500 securities index was flat. The economic loss, i.e., damages, suffered by plaintiff and other members of the Class were a direct result of Defendants' fraudulent scheme to artificially inflate FormFactor's stock price and the subsequent significant decline in the value of FormFactor's stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

INSIDER STOCK SALES DURING THE CLASS PERIOD

25. During the Class Period, in the midst of Defendants' fraudulent scheme, Company insiders, including Defendants, sold their shares of FormFactor stock in accordance with the following schedule:

| Date | Insider | Shares | Avg. Price | Proceeds |
|---|---|---|---|---|
| 5/1/2006 | BRONSON JOSEPH R | 25000 | $41.33 | $1.033.250 |
| | | | | |
| 5/1/2006 | CAMPBELL THOMAS J | 3125 | $41.65 | $130.156 |
| 5/3/2006 | CAMPBELL THOMAS J | 1041 | $42.65 | $44,398 |
| 8/29/2006 | CAMPBELL THOMAS J | 3125 | $46.02 | $143.812 |
| 2/5/2007 | CAMPBELL THOMAS J | 5209 | $43.50 | $226.591 |
| 7/30/2007 | CAMPBELL THOMAS J | 5547 | $40.44 | $224.320 |
| | | | | |
| 8/3/2006 | FOSTER RONALD C | 1800 | $43.00 | $77,400 |
| 9/1/2006 | FOSTER RONALD C | 1800 | $48.33 | $86,994 |
| 10/4/2006 | FOSTER RONALD C | 1800 | $43.00 | $77,400 |
| 2/1/2007 | FOSTER RONALD C | 5000 | $43.00 | $215,000 |
| 3/1/2007 | FOSTER RONALD C | 4000 | $43.00 | $172,000 |
| 4/2/2007 | FOSTER RONALD C | 1800 | $44.75 | $80.550 |
| 5/2/2007 | FOSTER RONALD C | 1800 | $43.00 | $77,400 |
| 6/15/2007 | FOSTER RONALD C | 1800 | $43.00 | $77,400 |
| | | | | |
| 8/30/2006 | KHANDROS IGOR Y | 20000 | $49.00 | $980,000 |
| 6/15/2007 | KHANDROS IGOR Y | 10000 | $43.00 | $430.000 |
| 6/18/2007 | KHANDROS IGOR Y | 1400 | $43.00 | $60,200 |
| 8/8/2007 | KHANDROS IGOR Y | 10000 | $43.00 | $430.000 |
| 8/17/2007 | KHANDROS IGOR Y | 10000 | $43.68 | $436,800 |
| 8/25/2007 | KHANDROS IGOR Y | 94492 | $44.22 | $94.536 |
| 9/4/2007 | KHANDROS IGOR Y | 40000 | $46.00 | $1.840.000 |
| 9/17/2007 | KHANDROS IGOR Y | 25050 | $45.59 | $1.142.000 |

| | | | | |
|---|---|---|---|---|
| 9/17/2007 | KHANDROS IGOR Y | 4950 | $46.06 | $228.000 |
| 10/16/2007 | KHANDROS IGOR Y | 10000 | $43.00 | $430.000 |
| 5/1/2006 | MERKADEAU STUART L | 20000 | $41.45 | $829.000 |
| 5/4/2006 | MERKADEAU STUART L | 2693 | $41.63 | $112.109 |
| 5/4/2006 | MERKADEAU STUART L | 307 | $41.63 | $12.780 |
| 7/5/2006 | MERKADEAU STUART L | 3000 | $46.73 | $140.190 |
| 8/1/2006 | MERKADEAU STUART L | 1000 | $41.59 | $41.590 |
| 9/5/2006 | MERKADEAU STUART L | 3000 | $48.75 | $146.250 |
| 11/6/2006 | MERKADEAU STUART L | 3000 | $36.80 | $110.399 |
| 2/1/2007 | MERKADEAU STUART L | 5000 | $44.00 | $220.000 |
| 2/13/2007 | MERKADEAU STUART L | 3000 | $43.19 | $129,570 |
| 2/26/2007 | MERKADEAU STUART L | 7000 | $46.00 | $322.000 |
| 7/31/2007 | MERKADEAU STUART L | 7500 | $39.38 | $295.350 |
| 2/5/2007 | PRESTRIDGE JAMES A | 18000 | $43.32 | $779.760 |
| 5/1/2006 | WAGNER HARVEY A | 5000 | $42.00 | $210.000 |
| | **Totals** | **367239** | | **$12,087,205** |

## FALSE FINANCIAL STATEMENTS

26. In order to overstate its earnings during the Class Period, FormFactor violated GAAP and SEC rules, including rules relating to the implementation and application of sound accounting practices, which resulted in improper accounting entries that caused the Company's reported inventory, margins and net income to become erroneous and artificially inflated. Additionally, the Company failed to properly train its staff on the implementation of adequate and reliable internal controls over the Company's financial reporting.

27. The Company's financial statements issued during the Class Period and the statements about them were false and misleading, as such financial information was not prepared in conformity with GAAP or SEC guidelines, nor was the financial information a fair presentation of the Company's operations due to the Company's improper accounting in violation of GAAP and SEC rules.

28. On October 24, 2007, FormFactor admitted that its previous financial statements for FY2006 and through 2Q07 improperly accounted for its inventory valuation, were not a fair presentation of FormFactor's financial results and were presented in violation of GAAP and SEC rules.

29. GAAP are those principles recognized by the accounting profession as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Regulation S-X (17 C.F.R. §210.4-01(a) (1)) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate. Regulation S-X requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosure which would be duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

30. Due to these accounting improprieties, the Company presented its financial results and statements in a manner which violated GAAP, including the following fundamental accounting principles:

(a) The principle that interim financial reporting should be based upon the same accounting principles and practices used to prepare annual financial statements was violated (APB No. 28, ¶10);

(b) The principle that financial reporting should provide information that is useful to present and potential investors and creditors and other users in making rational investment, credit and similar decisions was violated (FASB Statement of Concepts No. 1, ¶34);

(c) The principle that financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and effects of transactions, events and circumstances that change resources and claims to those resources was violated (FASB Statement of Concepts No. 1, ¶40);

(d) The principle that financial reporting should provide information about how management of an enterprise has discharged its stewardship responsibility to owners (stockholders) for the use of enterprise resources entrusted to it was violated. To the extent that management offers securities of the enterprise to the public, it voluntarily accepts wider responsibilities for accountability to prospective investors and to the public in general (FASB Statement of Concepts No. 1, ¶50);

(e) The principle that financial reporting should provide information about an enterprise's financial performance during a period was violated. Investors and creditors often use

information about the past to help in assessing the prospects of an enterprise. Thus, although investment and credit decisions reflect investors' expectations about future enterprise performance, those expectations are commonly based at least partly on evaluations of past enterprise performance (FASB Statement of Concepts No. 1, ¶42);

(f) The principle that financial reporting should be reliable in that it represents what it purports to represent was violated. That information should be reliable as well as relevant is a notion that is central to accounting (FASB Statement of Concepts No. 2, ¶¶58-59);

(g) The principle of completeness, which means that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions was violated (FASB Statement of Concepts No. 2, ¶79); and

(h) The principle that conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered was violated. The best way to avoid injury to investors is to try to ensure that what is reported represents what it purports to represent (FASB Statement of Concepts No. 2, ¶¶95, 97).

31. Further, the undisclosed adverse information concealed by defendants during the Class Period is the type of information which, because of SEC regulations, regulations of the national stock exchanges and customary business practice, is expected by investors and securities analysts to be disclosed and is known by corporate officials and their legal and financial advisors to be the type of information which is expected to be and must be disclosed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE

## FRAUD-ON-THE-MARKET DOCTRINE

32. At all relevant times, the market for FormFactor was an efficient market, for the following reasons, among others:

(a) FormFactor met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, defendants filed periodic public reports with the SEC; and

(c) Defendants regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures. such as communications with the financial press and other similar reporting services.

33. As a result of the foregoing, the market for the securities of FormFactor promptly digested current information regarding FormFactor from all publicly available sources and reflected such information in stock prices of FormFactor. Under these circumstances, all persons who purchased or acquired the securities of FormFactor during the Class Period suffered similar injury through their purchase of the aforementioned securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

34. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by executive officer(s) of defendants who knew that those statements were false when made.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased FormFactor publicly traded securities on the open market during the Class Period (the "Class"). Excluded from the Class are the Defendants.

36. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to

the parties and the Court. During the Class Period, FormFactor had approximately 30.5 million shares of stock outstanding, owned by hundreds if not thousands of persons.

37. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions which may affect individual Class members include:

(a) Whether the Exchange Act was violated by Defendants;

(b) Whether Defendants omitted and/or misrepresented material facts;

(c) Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) Whether Defendants knew or deliberately disregarded that their statements were false and misleading;

(e) Whether the prices of FormFactor's publicly traded securities were artificially inflated; and

(f) The extent of damage sustained by Class members and the appropriate measure of damages.

38. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

39. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### Violation of §10(b) of the 1934 Act and Rule 10b-5 Against All Defendants

41. Plaintiff incorporates ¶¶1-40 by reference.

42. During the Class Period, Defendants disseminated, approved or deliberately disregarded the false statements specified above, which they knew or should have known were misleading in that they contained misrepresentations and failed to disclose material facts necessary

in order to make the statements, in light of the circumstances under which they were made, not misleading.

43. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a) Employed devices, schemes, and artifices to defraud:

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of publicly traded FormFactor publicly traded securities during the Class Period.

44. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for FormFactor publicly traded securities. Plaintiff and the Class would not have purchased FormFactor publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

45. As a direct and proximate result of these Defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of FormFactor publicly traded securities during the Class Period.

## COUNT II

## For Violation of §20(a) of the 1934 Act Against All Defendants

46. Plaintiff incorporates ¶¶1-45 by reference.

47. The Individual Defendants acted as controlling persons of FormFactor within the meaning of §20(a) of the Exchange Act. By reason of their positions as officers and/or directors of FormFactor and their ownership of FormFactor stock, the Individual Defendants had the power and authority to cause FormFactor to engage in the wrongful conduct complained of herein. FormFactor controlled each of the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants and FormFactor are liable pursuant to §20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for judgment as follows:

(a) Declaring this action to be a proper class action pursuant to FRCP 23;

(b) Awarding plaintiff and the members of the Class damages, interest and costs; and

(c) Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all causes of action so triable.

DATED: November 20, 2007

Respectfully submitted,

SCOTT + SCOTT, LLP
Arthur L. Shingler III (181719)
Nicholas J. Licato (228402)
600 B Street, Suite 1500
San Diego, CA 92101
Tel.: 619/233-4565
Fax: 619/233-0508

SCOTT + SCOTT LLP
David R. Scott
108 Norwich Avenue
P. O Box 192
Colchester, CT 06415
Tel: 860/537-5537
Fax: 860/537-4432

***Counsel for Plaintiff***

PLAINTIFF CERTIFICATION
PURSUANT TO FEDERAL SECURITIES LAWS

Yuk Ling Liu, ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the Complaint and retains Scott + Scott, LLP and such co-counsel it d appropriate to associate with to pursue such action on a contingent fee basis.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel, or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providi testimony at deposition and trial, if necessary.

4. Plaintiff's transaction(s) in the FORMFACTOR, INC. (FORM) security that is the subject this action during the Class Period is/are as follows:

| No of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|

REDACTED
SEE "ATTACHMENT TO THE PLAINTIFF CERTIFICATION OF YUK LING LUI"

5. During the three years prior to the date of this Certification, Plaintiff has never served, nor sought to serve, as a class representative in a federal securities fraud case.

REDACTED – SEE ATTACHMENT

7 6. Plaintiff will not accept any payment for serving as a representative party on behalf of the cl beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by t Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9 day of November, 2007, at Sun Valley, ID (city, state).

Your Printed Name: Yuk Ling Liu

Signature: [signature]

Mailing Address:

REDACTED

Telephone number:

E-mail address:

**Attachment to the Plaintiff Certification of Yuk Ling Lui**

Cert Date:      Nov. 9, 2007
Case:           Formfactor (FORM)
Securities:     Common Stock

| No. Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 200 | Buy | 25-Jul-07 | $40.15 |
| 200 | Buy | 30-Jul-07 | $40.38 |
| 400 | Sell | 20-Aug-07 | $40.00 |
| 200 | Buy | 10-Apr-07 | $45.00 |
| 200 | Sell | 21-Sep-07 | $45.00 |
| 200 | Buy | 24-Sep-07 | $45.80 |